**Melissa Baloian SBN# 232602**
**Law Office of Melissa Baloian**
**5424 N. Palm Ave. Suite 106**
**Fresno, California 93704**
**Telephone (559) 352-2331**
**Mbaloian.law@gmail.com**

Attorney for Defendant GILBERTO ZARATE.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GILBERTO ZARATE, ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:16-CR-00122-001-DAD <br><br> **MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)** |

## I. INTRODUCTION

The defendant, GILBERTO ZARATE, through his attorney, respectfully moves this Court pursuant to 18 U.S.C. 3582 (c)(1)(A)(i) to reduce his sentence or to transfer the remainder of his sentence to a term of home confinement. As amended by the First Step Act, the compassionate release statute allows courts to reduce sentences for "extraordinary and compelling reasons." Mr. Zarate's medical issues involving asthma and allergies, combined with the growing coronavirus pandemic and his exposure to COVID-19, provide an extraordinary and compelling basis for sentence reduction, or in the alternative, home confinement for Mr. Zarate.

//

//

## A. The Sentencing Court has Authority Under 18 U.S.C. Section 3582 (c)(1)(A)(i), to Reduce a Term of Imprisonment.

Under 18 U.S.C. 3582 (c)(1)(A)(i), also referred to as the compassionate release statute, the sentencing court has authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. 3582 (c)(1)(A)(i), states the court may modify a term of imprisonment,

> 1) in any case –
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS § 3553 (a)] to the extent that they are applicable, if it finds that –
> (i) extraordinary and compelling reasons warrant such a reduction;...
>
> and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission;

The statutory requirements are for the court to (1) find extraordinary and compelling reasons for the reduction; (2) consider the relevant sentencing factors under 18 U.S.C. § 3553 (a); and (3) ensure any reduction is consistent with applicable policy statements.

## B. Relevant Facts and Procedural History

On February 12, 2018, Mr. Zarate entered into a plea to Count 1, 21 U.S.C. §§ 846, 841 (a)(1) and (b)(1)(A)(viii), conspiracy to distribute and possess with intent to distribute a controlled substance (methamphetamine), a Class A Felony. (Dkt. # 212.) This Court sentenced him on June 18, 2018, to 131 months in the Bureau of Prisons, with 60 months of supervised release. (Dkt. # 237.)

//

According to the Presentence Investigation Report, the applicable guideline range for Mr. Zarate was 188-235 months, with five years of supervised release. Probation recommended a term of 188 months. (PSR p. 4.) The government recommended the low end of the guideline range according to the plea agreement. (Dkt. #210) The court, in consideration of facts pertaining to Mr. Zarate, sentenced him below the guideline range to a sentence of 131 months. Mr. Zarate has been in custody since July 7, 2016. He has served about 54 months of the 131-month sentence. Mr. Zarate was born in Acapulco, Mexico, and is an illegal alien. (PSR p. 3.)

While in custody, and during the surge of the current COVID-19 pandemic, Mr. Zarate filed a request for compassionate release to the Warden at Great Plans Correctional Facility, on May 19, 2020. Two days later, on May 21, 2020, Mr. Zarate filed two additional requests for compassionate release addressed to the Warden. (See Exhibit A.) On June 14, 2020, the Warden denied Mr. Zarate's request due to his ICE Detainer. (See Exhibit B.)

## II. ARGUMENT

### A. The Court Has Authority to Consider Mr. Zarate's Motion Because More Than Thirty Days Have Lapsed since Mr. Zarate's Request.

The compassionate release statute previously provided sentence reductions only upon motion of the Director of the Bureau of Prisons (BOP); however, Congress expanded the statute in the First Step Act of 2018. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5238 (Dec. 21, 2018.) As amended, § 3582 (c)(1)(A)(i), now permits courts to consider motions filed by the defendant so long as "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" "If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must 'fully exhaust[] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison. 18 U.S.C. § 3582(c)(1)(A)." (*United States v. Alam*, 960 F.3d 831, 833-834 (6th Cir. 2020.)

//

The reason for the expansion to include defense-filed motions was the "documented infrequency with which the BOP filed motions for a sentence reduction on behalf of defendants." *United States v. Reid*, *No.* 1:97-CR-00006-AJT, 2020 WL 1248493, at p. 7 (E.D. Va. Mar.16, 2020.) Accordingly, "while the First Step Act did preserve the BOP's role relative to a sentence reduction in certain limited respects, it eliminated the BOP Director's role as the *exclusive* channel through which a sentence reduction could be considered by the courts." *Id.* (emphasis in original.)

In Mr. Zarate's case the timing provision has been satisfied. Mr. Zarate originally submitted a request for compassionate release to the warden of his facility May 19, 2020, and then again on May 21, 2020. The warden responded on June 14, 2020, denying Mr. Zarate's requests. (Exhibits A and B)

In Mr. Zarate's case, more than 30 days lapsed since his request to the warden, providing the basis for the Court to consider Mr. Zarate's motion. *See United States v. Spears,* No. 3:98-CR-0208-SI-22, 2019 WL 5190877, a p. 2 (D. Or. Oct. 15, 2019.) (granting the defendant's compassionate release motion on the first business day after the 30-day period expired); *United States v. Robinson*, No. 16-CR-5307 BHS-5, 2019 WL 2567356 at p. 2 (W.D. Wash. June 21, 2019) (staying consideration of a compassionate release motion for exactly the 30-day period.) This motion is ripe for review on the merits.

**B. Mr. Zarate's Vulnerability and Exposure to COVID-19 is an Extraordinary and Compelling Reason for an Immediate Sentence Reduction or Home Confinement Sentence.**

The compassionate release statute does not expressly define or limit what constitutes an "extraordinary and compelling" reason for a sentence reduction. The current global pandemic is a quintessential extraordinary circumstance beyond what most Americans have experienced in their lifetimes. Based on Mr. Zarate's health issues and exposure to COVID-19 within the prison, Mr. Zarate is amongst those at risk for serious illness. Mr. Zarate has asthma and allergies, a herniated disc in his lower back (L5), and anxiety (PSR p. 12.) The combination of

circumstances specific to Mr. Zarate provides a compelling reason for Mr. Zarate's sentence to be reduced or ordered as home confinement.

### 1. The Court has Authority to Find Extraordinary and Compelling Reasons Other than Those Expressly Identified in Commentary to U.S.S.G. § 1B1.13.

In 28 U.S.C. § 994 (t), Congress delegated to the Sentencing Commission authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The policy statement issued in exercise of that authority, U.S.S.G. § 1B1.13, provides examples of "extraordinary and compelling reasons" only in the application notes. The examples generally fall into four categories based on a defendant's: (1) terminal illness; (2) debilitating physical or mental health condition; (3) advanced age and deteriorating health in combination with the amount of time served; or (4) compelling family circumstances. (U.S.S.G. § 1B1.13, comment n.1 (A)-(C).) The commentary also includes a catch-all provision under "Other Reasons." Under this provision, it is for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. (*Id.* at comment n.1 (D).)

However this policy statement was last amended in November 2018, before the First Step Act was passed, and it still requires a motion filed by the BOP. For that reason "a growing number of district courts have concluded the Commission lacks" a policy statement applicable to the post-First Step Act statute. (*United States v. Mondaca,* No. 89-CR-0655 DMS, 2020 WL 102904 (S.D. Cal. Mar. 3 2020) internal quotations omitted); (*See also United States v. Brown,* 411 F.Supp. 3d 446, 449-50 (S.D. Iowa 2019.) In *United States v. Cantu*, the Court explained,

> Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582.

(No. 1:05-CR-458-1, 2019 WL 2498923 at p. 4 (S.D. Tex. June 17, 2019) emphasis in original.) Similarly, in *Redd*, the court noted that § 1B1.13 "by its terms applies only to motions for compassionate release filed by the BOP Director not motions filed by defendants." (2020 WL 1248493, at p. 6.) Therefore, the court concluded, "there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" (*Id.*) More recently, courts are found to have broad discretion to decide what constitute extraordinary and compelling reasons for a reduction-in-sentence under 3582(c)(1)(A). District courts are not bound by U.S.S.G. 1B1.13 to make a determination for a compassionate release. (*United States v. Brooker*, 976 F.3d 228, 230, 236, (2nd Cir. Sept. 25, 2020).)

Even where courts have not deemed § 1B1.13 entirely inapplicable due to the lack of an amendment, they have held judges have authority based on the catch-all provision in Application Note 1(D) to find extraordinary and compelling reasons other than those listed. (*See United States v. Fox*, No. 2:14- CR-03- DBH, 2019 WL 3046086, at p. 3 (D. Me. July 11, 2019) stating that the existing policy statement provides "helpful guidance," but "is not ultimately conclusive given the statutory change.") In *Redd*, the court explained "Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sough by the BOP Director in the first instance." (*Redd*, 2020 WL 1248493, a p. 7; *see also United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719 at p. 2 (D. Kan. Mar. 11, 2020), "[A] majority of federal district courts have found that the most natural reading of the amended § 3582 (c) and § 994 (t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion property before it." (Internal quotation marks omitted.))

The government conceded this point in *United States v. Young*, agreeing that "the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." (No. 2:00-CR-00002-1, 2020 WL 1047815, at p. 6 (M.D. Tenn. Mar. 4, 2020.) The Court in *Young* followed the

majority of district courts in recognizing that § 1B1.13's defined categories are not exclusive: "In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." (*Ibid.*)

Accordingly, this Court has authority to consider whether the worsening global pandemic, combined with the other relevant circumstances in this case, present an extraordinary and compelling basis for a sentence reduction, regardless of whether it falls within one of the existing categories in § 1B1.13 commentary.

### 2. COVID-19 Is an Unprecedented and Rapidly Expanding Global Health Emergency that Presents a Serious Risk to Vulnerable Prisoners.

On March 11, 2020, the World Health Organization officially classified the new strain of coronavirus which causes COVID-19 as a pandemic.[1] Severity of the COVID-19 can be seen in the actions of local and national leaders, who have taken serious measures to prevent the spread of the disease. All 50 states and the national government have declared states of emergency.[2] As of December 10, 2020, the United States CDC reports 15,271,571 confirmed cases of COVID-19, with 288,762 deaths.[3]

The National Commission on COVID-19 and Criminal Justice found that inmates are *four times* as likely to become infected with COVID-19 than the general public, and the mortality rate is twice the rate in prison than in the general public.[4] "COVID-19 case rates have been substantially higher and escalating much more rapidly in prisons than in the US population."[5] Conditions of imprisonment create the ideal environment for the transmission of

---

[1] *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19 – 11 March 2020*, World Health Organization (Mar. 11, 2020), https:/bit.ly/2W8dwpS.
[2] *See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak* (Mar. 13, 2020.), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-cornoavirus-disease-covid-19-outbreak./; Kamran Rahman & Alice Miranda Ollstein, *How States Are Responding to Coronavirus, in 7 Maps*, Politico (Mar. 24, 2020), https://politico.com/news/2020/03/24/coronavirus-state-response-maps-146144.
[3] CDC, Cases and Deaths in the US, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/us-cases-deaths.html, last accessed December 11, 2020.
[4] National Commission on COVID-19 and Criminal Justice, "Impact Report: COVID-19 and Prisons." (Sept. 2, 2020.) https://covid19.counciloncj.org/2020/09/02/covid-19-and-prisons/.
[5] Brendan Saloner, *COVID-19 Cases and Deaths in Federal and State Prisons*, The Journal of the American Medical Association, (July 8, 2020), https://jamanetwork.com/journals/jama/article-abstract/2768249.

contagious diseases.[6] "Incarcerated/detained persons live, work, eat study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced."[7]

Crowding, inadequate ventilation, and security issues all contribute to the spread of infectious disease in jails and prisons.[8] Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content.[9] Additionally, incarcerated people tend to be in poorer health than the general population. According to a recent Bureau of Justice study, approximately half of state and federal prisoners and jail inmates have chronic conditions such as cancer, high blood pressure, diabetes, cirrhosis of the liver, heart disease, and asthma.[10]

The Bureau of Prisons has seen the rise of the reported COVID-19 cases. As of December 10, 2020, 46,882 federal inmates and 1,743 BOP staff have confirmed positive COVID-19 results; 23,556 inmates and 2,199 BOP staff have recovered; and 154 inmates and 2 BOP staff members have died as a result of COVID-19. (Federal Bureau of Prisons, www.bop.gov/coronavirus.) Mr. Zarate is housed at a privately managed facility, Great Plains Correctional Institution. According to the BOP website, there are currently 7 inmates with positive results for COVID-19, and 159 inmates have recovered. (Federal Bureau of Prisons, www.bop.gov/coronavirus, last accessed 12/11/20.) Great Plains CI has seen a significant rise in COVID-19 cases.

### 3. Mr. Zarate Runs a High Risk of Serious Illness or Death During this COVID-19 Pandemic.

As laid out earlier in this motion, Mr. Zarate has several health issues. Most critical is Mr. Zarate's diagnosis with asthma. At age 13, Mr. Zarate started his battle with asthma. Over

---

[6] Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047 (2007), http://doi.org/10.1086/521910.
[7] Centers for Disease Control and Prevention (CDC), *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Mar. 23, 2020.) https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.
[8] Martin Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators'* NPR (Mar. 13, 2020), https://www.npr.org/2020/03/13/815002753/prisons-and-jails-worry-about-becoming-coronavirus-incubators.
[9] Keri Blakinger & Beth Schwarzapfel, *How Can Prisons Contain Coronavirus When Purell is a Contraband?*, ABA Journal (Mar. 13, 2020), https://www.abajournal.com/news/article/when-purell-is-conraband-how-can-prisons-contain-coronavirus.

the last 26 years, Mr. Zarate has been dependent on asthma medication. (PSR p. 12.) As he grew up, Mr. Zarate could not perform in sports like other kids; he would have short breaths and needed an inhaler. Now, Mr. Zarate still is reliant on asthma medication and has two inhalers. (See Exhibit C, sealed medical records.) Mr. Zarate receives mediation for nerve pain due to his herniated disc. He also is prescribed an antidepressant for his anxiety. (See Exhibit C.)[11]

"Asthma is a chronic, or long-term, disease that inflames and narrows your lung's airways."[12]

> COVID-19 is a respiratory illness that can cause a dry cough and shortness of breath, so it likely comes as no surprise that it can wreak havoc on the intricate respiratory system lying inside a person's chest. Once the virus gains entry, it begins to cause injury to a person's airways and lungs. While anyone can get infected with the new coronavirus, some people have a higher risk of developing a more serious illness — including people with moderate-to-severe asthma.[13]

The CDC has stated "people with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."[14] COVID-19 affects the respiratory tract and can cause an asthma attack. People with asthma are warned to take careful precautions: 30-day supply of medications, wash hands, avoid close contact with other people, stay at least 6 feet away from others, wear masks, avoid crowds, use hand sanitizer, and during a COVID-19 outbreak stay home.[15] Mr. Zarate cannot do any of these precautions on a regular basis. He cannot keep extra medication on him, he cannot stay away from people, he cannot avoid crowds, nor can he avoid a COVID-19 outbreak. In fact, when an outbreak occurs, he will be caught in the midst of the virus while in prison. If Mr. Zarate contracts COVID-19 he faces very serious health issues.

---

[10] Laura M. Maruschak et al., *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, Bureau of Justice Statistics, NCJ 248491, 1 (Rev. Oct. 4, 2016) https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.
[11] Counsel has attempted to obtain Mr. Zarate's complete medical records and have only received the three pages attached in Exhibit C.
[12] Asthma.com, *Asthma Questions, Answered*. https://www.asthma.com/understanding-asthma/questions-about-asthma/?cc=ps_TLWAEMX7DB729403&mcm=200000&gclsrc=aw.ds&&gclid=EAIaIQobChMIs8qOwMvE7QIVB8DICh2elgDKEAAYASAAEgLgwvD_BwE
[13] Katie McCallum, *Asthma and COVID-19: What You Need to Know About Your Risk*, Houston Methodist. (Aug. 3, 2020.) https://www.houstonmethodist.org/blog/articles/2020/aug/asthma-and-covid-19-what-you-need-to-know-about-your-risk/
[14] Center for Disease Control and Prevention, *Risk of Severe Illness from COVID-19*, Nov. 20, 2020. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.
[15] *Ibid.*

### 4. Mr. Zarate's Immigration Status Should Not Prohibit This Court from Considering a Compassionate Release.

Mr. Zarate is not a citizen of the United States. Mr. Zarate's status should not prohibit this Court from considering him a candidate for compassionate release. Compassionate release has been granted to numerous inmates that had ICE detainers and expected to be taken into ICE custody and deported once released from BOP custody. See *United States v. Reyes-Cantu*, Case No. 1:18-CR-934, Dkt. No. 32 (S.D. Tx. July 14, 2020) (granting compassionate release for an undocumented defendant subject to an ICE detainer following a conviction for an aggravated felony where extraordinary and compelling reasons were found due to defendant's serious health conditions); *United States v. Rodriguez-Barron,* No. 2:94-cr-0559-GW, Dkt. No. 425 (C.D. Cal. Jul. 13, 2020); *United States v. Reyes-De La Rosa*, No. 5:18-CR-55, 2020 WL 3799523 (S.D. Tx. July 7, 2020) (releasing undocumented defendant convicted of illegal re-entry despite ICE detainer, with no opposition from government given defendant's health conditions, the unavailability of home confinement for Defendant, and the nonviolent nature of his underlying offense); *United States v. Reyes-Flores*, Case No. 4:12-CR-132-D, Dkt. No. 112 (E.D. NC. July 2, 2020) (releasing undocumented defendant convicted of an aggravated felony, based on a finding that extraordinary and compelling reasons exist due to his age at 72 years old and terminal illness); *U.S. v. Arenales-Monroy*, Case No. 16-CR-20374, Dkt. No. 42 at *1 (S.D. Fla. June 15, 2020), (wherein the government conceded release of an undocumented defendant "so that a pending detainer may be executed by" ICE); *United States v. Kalkat*, Case No. 2:17-CR-0022-WFN-1, Dkt. No. 327 (E.D. Wa. July 6, 2020) (releasing undocumented defendant who is a Canadian citizen subject to deportation upon release from BOP custody); *United States v. Gonzalez*, Case No. 5:10-CR-172-BO, Dkt. No. 156 (E.D. NC. April 13, 2020) (releasing undocumented defendant convicted of an aggravated felony, with an ICE detainer, in light of compelling factors including his age at 62 years, serious heart condition, and service of a significant portion of the sentence); *United States v. Salabarria*, Case No. 7:00-CR-95-1-BO, Dkt. No. 125 (E.D. NC. April 14, 2020) (releasing undocumented defendant convicted of an aggravated felony, based on a finding that extraordinary and compelling reasons exist due to his

medical condition, including diabetes and cardiovascular disease); and *United States v. Bayuo*, No. 15-cr-576 (JGK), 2020 U.S. Dist. LEXIS 108696 (S.D.N.Y. June 20, 2020) (releasing undocumented defendant convicted of multiple aggravated felony counts despite ICE detainer in light of extraordinary and compelling reasons due to client's heightened vulnerability to severe symptoms of COVID-19); *United States v. Bennett*, No. 05 CR. 1192-1 (NRB), 2020 WL 2539077, at *2 (S.D.N.Y. May 18, 2020) (granting a motion under Section 3582(c)(1)(A) as to a defendant against whom an ICE detainer existed); *United States v. Guzman Soto*, No. 1:18-CR-10086-IT, 2020 WL 2104787, at *3 (D. Mass. May 1, 2020) (granting compassionate release where defendant was "subject to an immigration detainer whereby, upon release, he w[ould] be taken into custody by [ICE] for removal"); *United States v. Ardila*, No. 3:03-CR-264 (SRU), 2020 WL 2097736, at *2 (D. Conn. May 1, 2020) (finding that, in light of COVID-19, defendant's "medical condition and current conditions of confinement constitute extraordinary and compelling reasons for a reduction in sentence).

### C. The Courts Response to the COVID-19 Pandemic.

The Court's response to COVID-19 reflects the extreme exigency of the present circumstances, especially for those individuals most vulnerable to harm from the virus. In United *States v. Garlock,* for example, the district court extended the defendant's date for surrendering to serve an already-imposed prison sentence, concluding that no one should be entering BOP custody absent "truly extraordinary circumstances:"

> By now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided. Several recent court rulings have explained the health risks- to inmates, guards, and the community at large- created by large prison populations … The chaos has already begun inside federal prisons- inmates and prison employees are starting to test positive for the virus, quarantines are being instituted, visits from outsides have been suspended, and inmate movement is being restricted even more than usual . . . To avoid adding to the chaos and creating unnecessary health risks, offenders who are on release and scheduled to surrender to the Bureau of Prisons in the coming months should, absent truly extraordinary circumstance, have their surrender dates extended until this public health crisis has passed.

(No. 18-CR-00418-VC-1, 2020 WL 1439980 at p. 1 (N.D. Cal. Mar. 25, 2020.)

In *United States v. Copeland*, the Court granted a sentence reduction to time served under another portion of the First Step Act to a defendant serving a life sentence for a drug trafficking conspiracy and firearm possession. (No. 2:05-CR-00135-DCN (D.S.C. Mar. 24, 2020.)) The Court recognized that the defendant's "tenuous health condition" put him at "even higher risk for sever illness and possible death" from the COVID-19 pandemic. (*Id.* at p. 7.) The Court considered letters from members of Congress as evidence of its "desire for courts to 'use all available powers and authorities . . . to reduce the number of federal prisoners in . . . prisons,'" especially for elderly and sick individuals and those within the last 36 months of their sentences who are appropriate placement in home confinement. (*Id.*, quoting Letter of House Judiciary Committee, Mar. 19, 2020.) Similarly, in *Toledo Manrique,* the district court granted bail in an extradition matter, although the individual faced a life sentence in Peru. (2020 WL 1307109, at p. 1.) Noting that Toledo Manrique is 74 years old, the Court concluded, "[t]he risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail." (*Id.*)

Courts have made orders granting release based on the pandemic, but these cases fail to convey the full volume of precedent. *See, e.g.*, *United States v. Michaels,* No. SACR-16-76-JVS, 2020 WL 1482553 at p. 1 (C.D. Cal. Mar. 26, 2020 ("Michaels has demonstrated that the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i))); *United States v. Jaffee*, No. 19-CR-00088-RDM (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources."); *United States v. Harris*, No. 19_CR-00356-RDM (D.D.C. Mar. 26, 2020), ECF No. 35 ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions.")

//
//

**D. With Full Consideration to the § 3553 (a) Factors, Including the COVID-19 Pandemic, an Early Release or Home Confinement for Mr. Zarate Constitutes a Sentence Sufficient, But Not Greater than Necessary, to Accomplish the Goals of Sentencing**.

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553 (a) to determine whether a sentence reduction is warranted. (18 U.S.C. § 3582 (c)(1)(A)(i).) Under all of the circumstances, early release or home confinement is an appropriate outlet to satisfy the purposes of sentencing during this pandemic. Under *Pepper v. United States*, 562 U. S. 476, 490-493 (2011), the Court can, and indeed must, consider post-offense developments under § 3553(a).

Here the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents. Although the circumstances of the present offense qualified Mr. Zarate for the sentence this Court originally imposed, the sentencing purpose of a just punishment does not warrant a sentence that includes exposure to a life-threatening illness. In fact, the Eighth Amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody. (*Helling v. McKinney*, 509 U.S. 25, 28, (1993); *See also Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (applying *Helling* to exposure to asbestos); *Brown v. Mitchell*, 327 F.Supp. 2d 615, 650 (E.D. Va. July 28, 2004) (applying *Helling* to contagious diseases caused by overcrowding conditions.) The § 3553(a) factors can be met in this case by an order of early release or home confinement as a condition of supervised release. Mr. Zarate is in extreme danger of illness from COVID-19.

Mr. Zarate is a good candidate for early release or home confinement. Under § 3553(a)(2)(A), an early release or home confinement would be a "sufficient but not greater than necessary" sentence for Mr. Zarate. He has served about 4 years and 6 months of his sentence and has not had known disciplinary issues. After his sentence he will be on supervised release, if not deported. If he is deported Mr. Zarate will reside in Mexico. In addition, he has served his prison time during the COVID-19 pandemic, which has been an unusual and more difficult form of incarceration for inmates. While incarcerated there is a fear of the virus, and Mr. Zarate

can do very little to take health precautions and keep himself safe while cohabitating in close proximity with several other inmates.

Under § 3553 (a)(2)(B)-(C), early release or home confinement for Mr. Zarate will satisfy these requirements for the following reasons. First, Zarate has served a substantial amount of time in custody. He only has one prior criminal conviction, which was in 2004. Mr. Zarate served time in the California Department of Corrections and afterwards did not have any parole violations or revocations. (PSR p. 10.) Second, his time in jail and prison has deterred Mr. Zarate from violating the law and he understands if deported he cannot illegally reenter the United States. Further, Mr. Zarate does not have any (known) disciplinary issues and has behaved well while in prison. Mr. Zarate's conduct while in prison, establishes that the purposes of punishment have been met. Under *Pepper*, the Court must also consider "the most up-to-date picture" of the defendant's history and characteristics, which "shed light on the likelihood that [the defendant] will engage in future criminal conduct." (562 U.S. at p. 492.)

If he is released, Mr. Zarate has a plan: he will reside with his family in San Jose del Cabo, Mexico. He has two sisters, an aunt, and cousins that will help him with a place to stay and the necessities of living until he can find a job. Mr. Zarate has previously worked in restaurants and one day hopes to attend culinary school.

Finally, Mr. Zarate has an added deterrent posed by COVID-19 itself. Mr. Zarate is concerned with contracting COVID-19, especially while in prison. If the court allows his release, Mr. Zarate will be able to effectively practice the precautions recommended by CDC and protect his health. He will not take it for granted. A compassionate release will save him from the harm of COVID-19, and it will accomplish the goals of sentencing.

## III. CONCLUSION

For the foregoing reasons, Mr. Zarate respectfully request that the Court grant him a compassionate release and sentence him to serve the remainder of his term on home confinement.

Dated: December 11, 2020

/s/ MELISSA BALOIAN

**Melissa Baloian**
Attorney for Defendant