UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GILBERTO ZARATE,<br><br>Defendant. | No. 1:16-cr-00122-DAD-BAM-1<br><br>ORDER DENYING DEFENDANT ZARATE'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. Nos. 378, 391) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Gilberto Zarate. (Doc. No. 378.) That motion is based in part on the purported risks allegedly posed to defendant Zarate by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On July 28, 2016, an indictment was returned charging defendant Zarate with four counts: (1) conspiracy to distribute and possess with the intent to distribute 50 grams or more of actual methamphetamine and/or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(viii) (Count One); (2) distribution of 50 grams or more of actual methamphetamine and/or 500 grams

1   or more of a mixture or substance containing a detectable amount of methamphetamine in
2   violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) Count Three); (3) possession with intent to
3   distribute 50 grams or more of actual methamphetamine and/or 500 grams or more of a mixture
4   or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§
5   841(a)(1), 841(b)(1)(A)(viii) (Count Nine); and (4) possession of a firearm by a prohibited person
6   in violation of 18 U.S.C. § 922(g)(1) (Count Ten).  (Doc. No. 38.)  On February 12, 2018,
7   defendant entered a plea of guilty to Count 1 of the indictment pursuant to a plea agreement.
8   (Doc. Nos. 210, 212.)  On June 18, 2018, the court sentenced defendant to 131 months
9   imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 60-
10  month term of supervised release (unsupervised if the defendant is deported).  (Doc. Nos. 237,
11  238, 266.)  The court also imposed the mandatory $100 special assessment.  (*Id.*)

12  Defendant is currently serving his sentence at Great Plains Correctional Institution ("Great
13  Plains CI"), a private correctional institution in Hinton, Oklahoma that contracts with the BOP.
14  (Doc. Nos. 378 at 8; 388 at 2.)  Accounting for good time credits and time served prior to
15  sentencing while detained, defendant has served approximately 48% of his custodial sentence and
16  now has a projected release date of October 25, 2025.  (Doc. Nos. 388 at 2–3; 388-1 at 3–4.)

17  On December 11, 2020, defendant filed the pending motion for compassionate release
18  pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 378.)  On January 15, 2021, the government
19  filed its opposition to the motion, and on January 25, 2020, defendant filed his reply thereto.
20  (Doc. Nos. 388, 391.)

21  **LEGAL STANDARD**

22  A court generally "may not modify a term of imprisonment once it has been imposed."
23  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment
24  of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may
25  not be modified by a district court except in limited circumstances.").  Those limited
26  circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*,
27  452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018
28  ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C.

§ 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 979 (C.D. Cal. 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See*

---

emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

*United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 970; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.     Administrative Exhaustion**

Defendant asserts, and the government does not dispute, that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 378 at 3–4; 388 at 3.) Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and proven, the court will accept the government's concession and turn to the merits of defendant's motion.

/////

/////

**B.   Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp.

3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

Defendant argues that extraordinary and compelling reasons warranting reduction of his custodial sentence exist because of his medical vulnerability and exposure to COVID-19 at Great Plains CI, specifically the fact that he suffers from asthma, allergies, a herniated disc in his lower back, and anxiety. (Doc. No. 378 at 4–5.) Defendant asserts that he has battled asthma for the last 26 years and is dependent on asthma medication, including two inhalers. (*Id.* at 8–9.) Defendant also receives medication for nerve pain due to his herniated disc and an antidepressant for his anxiety. (*Id.* at 9.) Defendant argues that he is particularly vulnerable to COVID-19 because, according to the U.S. Centers for Disease Control and Prevention ("CDC"), "people with moderate to severe asthma may be at higher risk of getting very sick from COVID-19." (*Id.*) (quoting *People with Moderate to Severe Asthma*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last updated Jan. 20, 2021). Moreover, the CDC advises asthmatic individuals to take precautions, including "[maintain a] 30-day supply of medications, wash hands, avoid close contact with other people,

---

[4] Here, however, because defendant Zarate is only 39 years old (Doc. Nos. 391 at 5; 388 at 3), his age and age-related factors do not play a role in consideration of his pending motion.

stay at least 6 feet away from others, wear masks, avoid crowds, [and] use hand sanitizer," and defendant contends that he is unable to take any of these precautions on a regular basis because of his incarceration. (*Id.*)

In its opposition to the pending motion, the government argues that the mere existence of COVID-19 in society or in the correctional institution where defendant Zarate is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief, and his health conditions are well controlled by the treatment he is receiving at Great Plains CI. (Doc. No. 388 at 7.) Although the government does not dispute that defendant suffers from "mild to intermittent asthma," as shown by his BOP medical records and for which he is prescribed inhalers (Doc. Nos. 388 at 3; 396 at 4, 26, 29), the government contends that defendant's asthma is not "moderate to severe" and thus is not a CDC-recognized high risk factor for COVID-19. (Doc. No. 388 at 8–9.) But the government does note that defendant's medical records reflect that his height and weight result in a BMI of 30, "which falls at the low-end of the CDC's obesity definition, placing [defendant] in the class of adults that the CDC identifies as at increased risk of severe illness from COVID." (*Id.* at 9.) Nevertheless, the government argues that even considering his obesity, all of defendant Zarate's health conditions are well controlled by the treatment he is receiving at Great Plains CI and do not rise to the level of warranting compassionate release. (*Id.*) Moreover, the government emphasizes that the steps taken by Great Plains CI to prevent the spread of COVID-19 have been effective, noting there were no inmates being reported as having been diagnosed with COVID-19 when the government filed its opposition to the pending motion on January 15, 2021. (*Id.* at 4.)

In reply, defendant asserts that the categorization of his asthma has fluctuated, and despite the fact that his medical records do not characterize his asthma as severe, "his asthma is a serious and consistent health condition he has battled." (Doc. No. 391 at 3.) In response to the government noting defendant's BMI, defendant raises for the first time in his reply that his obesity is another factor that puts him at risk of suffering a serious illness were he to contract COVID-19. (*Id.*)

/////

   Here, the court finds that the absence of a formal diagnosis of moderate to severe asthma does not mean that defendant Zarate is not at an increased risk of suffering severe illness if he were to contract COVID-19 due to his asthma condition, for which the parties agree he has been prescribed an albuterol inhaler by medical staff at Great Plains CI.  The court also notes that defendant's BOP medical records show that he is 6 feet and one inch tall and weighs 235 pounds, which results a BMI of 31.  (Doc. No. 396 at 1; 391 at 3.)  It is also undisputed that according to the CDC, adults with a BMI of 30 or higher are "at increased risk of severe illness from the virus that causes COVID-19."  (Doc. Nos. 391 at 3; 388 at 9) (citing *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated December 29, 2020)).  Thus, defendant has shown that because he suffers from these medical conditions, he is at an increased risk for suffering severe illness if he were to be infected with COVID-19.

   However, defendant Zarate has not shown, or even argued for that matter, that Great Plains CI is presently unable to monitor and adequately treat his medical conditions. *See United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (relevant questions include the adequacy of the care and treatment being provided to the defendant in BOP given his pre-existing conditions and concluding there was no evidence that the circumstances surrounding his health or treatment were extraordinary or compelling.).  Notably, defendant Zarate did not dispute the government's assertion that his medical conditions are well controlled and being treated at Great Plains CI, and indeed his medical records reflect that he has received regular attention from medical staff at Great Plains CI for his asthma, allergies, anxiety, and other medical conditions.  (*See* Doc. No. 396.)  The court is also not persuaded that defendant's conclusory assertion that he is unable to maintain a 30-day supply of medication rises to the level of an extraordinary and compelling reason supporting compassionate release.  Specifically, there has been no showing here that defendant Zarate is being denied necessary

treatment or prescriptions or that necessary treatment of his conditions is being delayed in any way. *See, e.g., United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) (finding that defendant "has been unable to self-care in a BOP facility already overburdened by its COVID-19 response" where defendant could not receive breathing treatments to clear his lungs as required to treat his asthma, despite repeated requests for them); *United States v. Adeyemi*, No. 06-cr-124, 2020 WL 3642478, at *19 (E.D. Pa. July 6, 2020) (finding no extraordinary and compelling reason even though a potential lag in medication prescription refills of defendant's inhaler might impact his ability to self-manage his mild asthma).

As one court has acknowledged, "the presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and thus the inability of individuals at high risk of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and maintain social distancing may constitute an inability to provide self-care under some circumstances. *Gorai*, 2020 WL 1975372, at *3 (citation omitted). Here, however, defendant Zarate has not persuasively argued that he is being prohibited from taking appropriate precautions to avoid contracting COVID-19 or that his ability to provide self-care at Great Plains CI is currently substantially diminished. Rather, in his pending motion, defendant merely asserts in conclusory fashion that due to his incarceration, "he cannot keep extra medication on him, he cannot stay away from people, [and] he cannot avoid crowds." (Doc. No. 378 at 9.) But defendant Zarate has not made any specific allegations regarding, for instance, his lack of access to protective gear or cleaning and sanitizing supplies, or as to his lack of ability to social distance at Great Plains CI. He simply has not presented any evidence regarding the conditions that he is currently facing at Great Plains CI, or the ways in which those conditions render him unable to provide self-care.

Moreover, as the government noted in its opposition, there is fortunately not a current outbreak of COVID-19 at Great Plains CI. Defendant does not address this fact in his reply. According to BOP's website, as of February 12, 2021, at Great Plains CI it was being reported that there were zero "open lab-confirmed positive cases," there had been one inmate death, and

166 inmates had recovered from a COVID-19 infection. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at www.bop.gov/coronavirus/ (last visited Feb. 12, 2021).[5]

Accordingly, the court concludes that defendant Zarate has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A). Therefore, his motion for compassionate release will be denied at this time.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Zarate's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6] *See Parker*, 461 F. Supp. 3d at 979.

In the pending motion, defendant contends that the COVID-19 pandemic is an overriding factor that warrants a reduction in his sentence because "the sentencing purpose of a just punishment does not warrant a sentence that includes exposure to a life-threatening illness," and "prison time during the COVID-19 pandemic [] has been an unusual and more difficult form of incarceration." (Doc. No. 378 at 13.) Defendant Zarate also contends that because he has served a substantial amount of time in custody (about 4.5 years), without any known disciplinary issues, the purposes of punishment have been met. (*Id.* at 13–14.) In addition, defendant anticipates that because he is an illegal alien, upon his release he will likely be deported to Mexico, where he has

---

[5] While the undersigned does not necessarily accept these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

1   a place to stay with family. (*Id.* at 3, 13; Doc. No. 391 at 6.)[7] Defendant asserts that his risk of
2   recidivism is low, despite his one prior criminal conviction from 2004 when he was 24 years old,
3   because his time in jail and prison has deterred him from violating the law and that he
4   understands he cannot illegally reenter the United States. (Doc. No. 391 at 5–6.)

5         The government counters that defendant Zarate was a "large-scale methamphetamine
6   trafficker who supplemented his income through selling this dangerous drug to gang members,"
7   and "the amount of methamphetamine to which Zarate had access and his prior criminal
8   conviction for transporting methamphetamine evidence his ongoing danger to the community if
9   he is released." (Doc. No. 388 at 10–11.) The government also argues that the risk of recidivism
10  in defendant Zarate's case is high because his only prior felony conviction also stemmed from a
11  sale of a large quantity of methamphetamine to a confidential source, which shows that he did not
12  learn from his past mistake, and there is no reason to believe he would not reoffend once again if
13  released. (*Id.* at 12.) In addition, the government argues that defendant has already received the
14  benefit of a lenient sentence because he "was facing a sentence of 188–235 months imprisonment,
15  but the Court varied downward, imposing a sentence of 131 months." (*Id.*) According to the
16  government, if defendant were to be released now, he will have served an "effective sentence of
17  only four and a half years' imprisonment—a sentence far below the Guidelines range and with no
18  significant mitigating facts supporting such a drastic, unwarranted sentence reduction." (*Id.*)

19        As noted above, defendant is currently serving a 131-month sentence of imprisonment for
20  conspiracy to distribute and possess with the intent to distribute methamphetamine. (Doc. Nos.
21  237, 238, 266.) At the time of his sentencing on June 18, 2018, defendant was found to be
22  responsible for over 32 kilograms of methamphetamine. (Doc. No. 227 at 8, 18.) With his early
23  acceptance of responsibility, the U.S. Probation Office determined that defendant's total offense
24  level was 35 and his criminal history was II, resulting in an advisory sentencing guideline range
25  calling for a term of imprisonment of between 188 and 235 months. (*Id.* at 9, 11, 14.) The

---

[7] Defendant also cites case law for the proposition that his immigration status should not prohibit this court from considering his compassionate release. (Doc. No. 378 at 10.) The court does not find defendant's immigration status to be relevant in resolving the pending motion.

probation officer recommended a low-end of the guideline range sentence of 188 months in BOP custody. (*Id*. at 18.)[8]  After considering the government's motion as well as all applicable § 3553(a) factors and the circumstances of this case, the undersigned departed significantly downward from the advisory guideline range and sentenced defendant to a 131-month term of imprisonment. (Doc. No. 80 at 2.)

The court acknowledges that defendant does not have an extensive criminal history, but his one prior felony conviction was for a serious drug trafficking offense for which he was sentenced to state prison, and he is currently serving a 131-month sentence of imprisonment for his second very serious felony drug trafficking offense. This suggests both that defendant may pose a danger to the safety of the community if he were to be released and that he may also be likely to reoffend. But even if the court were to credit defendant's current belief that he will not reoffend (*see* Doc. No. 391 at 5), "[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). Here, as of the date of this order, defendant Zarate has served less than 50% of the 131-month sentence imposed, even with good time credits are applied. (*See* Doc. No. 388 at 2–3; 388-1 at 3–4.) In the court's view, a reduction of defendant's 131-month sentence effectively to one of five years or less would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate

/////

/////

/////

---

[8] As the presentence report noted, the offense to which the defendant entered his guilty plea carried with it a ten year mandatory minimum term of imprisonment. (Doc. No. 227 at 14.)

deterrence to criminal conduct.[9] *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to time served would not be consistent with the § 3553(a) sentencing factors.

## CONCLUSION

Because defendant Zarate has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 378) is denied.

IT IS SO ORDERED.

Dated: __**February 12, 2021**__          _/s/ Dale A. Drozd_
                                                                UNITED STATES DISTRICT JUDGE

---

[9] In the pending motion, defendant also appears to ask the court to release him on home confinement. (*See* Doc. No. 391 at 1, 6.) However, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5 n.6 & *7. Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served (i.e. approximately 55 months) and modify the conditions of supervised release to require home confinement for approximately 76 months. The court is unwilling to do so for the reasons set forth above.